## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WHITE WINSTON SELECT ASSET FUNDS, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>SWAY WATER, INC.<br><br>                Defendant. | Civil Action No. |

## COMPLAINT

Plaintiff White Winston Select Asset Funds, LLC ("**White Winston**") hereby files this Complaint against Defendant Sway Water, Inc. ("**Sway**"), and respectfully submits the following:

### *INTRODUCTON*

1.     This is a commercial dispute arising from Sway's loan default and breach of contract with White Winston.  White Winston seeks damages for breach of contract, for relief under Article 9 of the Uniform Commercial Code, for an accounting and for an associated declaratory judgment of its contractual rights and remedies against Sway.

### *PARTIES*

2.     White Winston is a limited liability corporation organized and doing business under the laws of the state of Delaware with a principal place of business in Boston, Massachusetts.

3.     Sway is a corporation organized and doing business under the laws of the state of Texas with a principal place of business in Austin, Texas.

## JURSIDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1332(a)(1), as this civil action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over Sway because Sway has consented to exclusive jurisdiction of this dispute in this Court at the election of White Winston.

6.      Venue in this District is proper pursuant to 28 U.S.C. §§1391 and 1404 because Sway has consented to exclusive venue of this dispute in this Court at the election of White Winston.

## FACTUAL BACKGROUND

### A.  The Terms Letter

7.      White Winston is a private investment fund that makes loans and investments in businesses throughout the world.

8.      Sway manufactures and sells beverages to retailers and consumers.

9.      On or about December 5, 2017, Sway and White Winston entered into a Terms Letter ("**Terms Letter**"), a genuine copy of which is attached as **Exhibit A**. Pursuant to the Terms Letter, White Winston and Sway contemplated a potential transaction (the "**Potential Financing**") whereby White Winston would invest $1,500,000 in Sway through the purchase of certain securities (the "**Purchased Securities**").

10.     The Terms Letter provided that Sway would pay or reimburse White Winston certain amounts White Winston incurred in preparing for the Potential Financing regardless whether the Potential Financing closed, including certain "Transaction Expenses" defined more fully in section 9 (c) of the Terms Letter (the "**Transaction Expenses**").

11.     The Terms Letter also provides (in paragraph 9(e)) for payment of a fee of $350,000 (the "**Break-Up Fee**") if White Winston was prepared to enter into the Potential Financing substantially as described in the Terms Letter, but Sway fails, refuses or is unable to close the Potential Financing with White Winston "<u>and</u> at any time from the date of [the Terms Letter] through the on-year anniversary of the Termination Date [as defined in the Terms Letter] [Sway] consummates *any* other financing (*with any source*), other than White Winston. . . ." (emphasis in original).  Sway acknowledged and agreed that the Break-Up Fee (i) "**does not constitute an unenforceable penalty; and (ii) represents a reasonable and appropriate fee and, or, liquidated damages in the context of the [Potential Financing].**" (emphasis in original).

12.     Sway also agreed in paragraph 9(c) to pay and reimburse White Winston for all costs, fees, and expenses of White Winston, including all legal fees and expenses of White Winston's attorneys for services provided to White Winston for the collection of amounts due White Winston under the Terms Letter.

13.     The Terms Letter also contemplated (in paragraph 9(f)) that prior to the closing of the Potential Transaction, Sway could borrow an interim six (6) month line-of-credit bridge loan in an amount up to $250,000.  Accordingly, White Winston from time to time advanced and loaned to Sway the principal amount of $17,711.48 pursuant to paragraph 9(f) of the Terms Letter.

14.     In order to secure the payment obligations of Sway to White Winston under paragraph 9 of the Terms Letter, in paragraph 9(e) Sway granted White Winston a first priority, senior security interest (the **Security Interest**") in substantially in substantially all of its assets (the "**Collateral**").

15.     The parties caused a financing statement (UCC-1) to be filed with the office of the Texas Secretary of State to perfect the Security Interest pursuant to Article 9 of the Uniform Commercial Code ("**UCC**").

16.     As of the filing of this Complaint, the Security Interest is valid, perfected, and enforceable, and is senior to any and all competing interest, liens, claims and interests in and to the Collateral.

### B.   *White Winston's Performance of the Terms Letter*

17.     Upon the mutual execution of the Terms Letter, and with the encouragement of Sway, White Winston forthwith began its due diligence upon the mutual execution of the Terms Letter. White Winston devoted significant resources towards its due diligence and incurred substantial third-party out-of-pocket costs arising out of and relating to its due diligence and consideration of the Potential Financing, and the negotiation, contemplated documentation, and contemplated execution of the Potential Financing.

18.     At all relevant times, White Winston was ready, able, and willing to proceed with the Proposed Financing on substantially the same terms and conditions as set forth in the Terms Letter.

### C.   *Sway's Decision Not to Close the Potential Financing*

19.     On or about January 22, 2018, Albert Swantner, an officer of Sway, informed White Winston that Sway did not intend to go forward and close on the Potential Financing.  In response, White Winston informed Sway that White Winston would provide to Sway an accounting of its Transaction Expenses for which Sway was obligated to pay and reimburse White Winston pursuant to section 9(c) of the Terms Letter.

20.     By letter dated February 6, 2018, (a genuine copy of which is attached as **Exhibit**

**B**), White Winston, through counsel, made written demand on Sway, through counsel, for reimbursement of the unpaid Transaction Expenses.

21.     As set forth in Exhibit B, as of February 6, 2018, White Winston's Transaction Expenses are in the minimum principal amount of $33,028.16.  Interest has accrued and continues to accrue on the Transaction Expenses until paid.

22.     From a search of publicly available information, it appears that since the execution of the Terms Letter, and from the date of [the Terms Letter] through the on-year anniversary of the Termination Date [as defined in the Terms Letter], Sway has consummated one or more financings (with one or more financing sources) other than White Winston, and accordingly is obligated to pay the Break-Up Fee to White Winston, but confirmation of these facts and the details regarding these facts are within the possession, custody and control of Sway.

23.     Sway has failed and refused, and continues to fail and refuse, to pay and reimburse White Winston for all Transaction Expenses and for the Break-Up Fee, without any legal excuse for its failure and refusal to pay and reimburse White Winston as required by the Terms Letter.

24.     Sway failure and refusal to pay and reimburse White Winston for all Transaction Expenses and for the Break-Up Fee constitutes a material breach by Sway of the Terms Letter.

25.     All conditions precedent to White Winston's rights of recovery herein have been performed or have occurred.

26.     A real, substantial, definite, actual, and concrete dispute exists between White Winston and Sway, touching on the legal relations of them that admits of specific relief through a decree of a conclusive character.

## CAUSES OF ACTION
### *(Breach of Contract – Transaction Expenses)*

27.     White Winston realleges and incorporates by reference the averments in paragraphs 1 – 26 above as if set forth here at length.

28.     Section 9 of the Terms Letter is a valid agreement between White Winston and Sway that is supported by valid consideration.

29.     Sway's failure and refusal to pay and reimburse White Winston for all Transaction Expenses constitutes a breach by Sway of section 9 of the Terms Letter.

30.     White Winston has fully performed its obligations under section 9 of the Terms Letter.

31.     White Winston has suffered damages resulting from Sway's breach of the Terms Letter, including, without limitation, for its unpaid Transaction Expenses and for continuing legal fees and expenses of White Winston's attorneys for services provided and to be provided to White Winston for the collection of amounts due White Winston under the Terms Letter.

## COUNT II
### *(Accounting and Break-Up Fee)*

32.     White Winston realleges and incorporates by reference the averments in paragraphs 1 – 31 above as if set forth here at length.

33.     The Potential Financing contemplated the purchase and sale of the Purchased Securities, and not just the establishment of a debtor and creditor relationship between White Winston and Sway, and contemplated the payment of the Break-Up Fee if "at any time from the date of [the Terms Letter] through the on-year anniversary of the Termination Date [as defined in the Terms Letter] [Sway] consummates *any* other financing (*with any source*), other than White Winston. . . ." (emphasis in original).

34.     White Winston is unable to determine the amount due to it on account of the Terms Letter, since the information regarding whether the Break-Up Fee is within the possession, custody, and control of Sway.

35.     White Winston is unable to determine whether the Break-Up Fee is due and payable without an accounting by Sway of any and all financing with any source consummated by Sway in the relevant time, and therefore White Winston has no adequate remedy at law.

36.     Sway should be compelled to account to White Winston by disclosing all other financings "with any source" since the date of the Terms Letter.

37.     The Court should enter judgment in favor of White Winston and against Sway for the Break-Up Fee if the accounting demonstrates that Sway has consummated "*any* other financing (*with any source*) other than White Winston" (emphasis in original).

## COUNT III
### *(Declaratory Judgment)*
### *(28 U.S.C. §2201)*

38.     White Winston realleges and incorporates by reference the averments in paragraphs 1 – 37 above as if set forth here at length.

39.     A real, substantial, definite, actual, and concrete justiciable controversy exists between White Winston and Sway, touching on the legal relations of them that admits of specific relief through a decree of a conclusive character.

40.     The Court should determine the amounts owed to White Winston by Sway under the Terms Letter and enter judgment in favor of White Winston and against Sway for all such amounts.

## COUNT IV
### *(Enforcement of Security Interest)*

41.     White Winston realleges and incorporates by reference the averments in paragraphs 1 – 40 above as if set forth here at length.

42.     Pursuant to section 9-601(a)(1) of the UCC as enacted in Massachusetts and Texas, White Winston has the right to "reduce a claim to judgment, foreclose, or otherwise enforce the claim [under section 9 of the Terms Letter and the Security Interest] . . . by any available judicial procedure."  Similarly, pursuant to section 9-609(b)(1) and (c) of the UCC as enacted in Massachusetts and Texas, White Winston may, inter alia, take possession of the Collateral "pursuant to judicial process" and require Sway to assemble the Collateral and make it available to White Winston at a reasonably convenient place to be designated by White Winston.

43.     White Winston requests that the Court enter one or more orders that prohibit Sway from interfering in White Winston's efforts to enforce its rights with respect to the Collateral under the UCC, as hereinabove alleged, and to assemble the Collateral and make it available and transfer the Collateral to White Winston at a reasonably convenient place to be designated by White Winston.

WHEREFORE, White Winston prays that the Court enter judgment in favor of White Winston and against Sway as follows:

a.  On Count I, in such amount as the Court determines is owed to White Winston due to Sway's breach of contract in failing to pay White Winston the Transaction Expenses as required by the Terms Letter;

b.  On Count II, ordering Sway to account to White Winston for any other financing with any source other than White Winston consummated by Sway at any time from the date of [the Terms Letter] through the on-year anniversary of the Termination Date [as defined in the Terms Letter], and awarding White Winston

judgment for the Break-Up Fee of $350,000 if at any relevant time Sway has consummated or will consummate any other financing;

c.   On Count III, determining and declaring the amounts owed to White Winston by Sway and entering judgment in favor of White Winston and against Sway accordingly,

d.   On Count IV, entering one or more orders pursuant to Article 9 of the Uniform Commercial Code that prohibit Sway from interfering in White Winston's efforts to enforce its rights with respect to the Collateral under the UCC, as hereinabove alleged, and requires Sway to assemble the Collateral and make it available and to transfer all Collateral to White Winston at a reasonably convenient place to be designated by White Winston;

e.   Awarding White Winston prejudgment and postjudgment interest, fees, and costs, including its attorney's fees, at the maximum amounts permitted by law,

f.   Awarding White Winston such other and further relief to which it may be entitled.


Dated:  February 26, 2018                                  Respectfully Submitted,


                                                           /s/ *Jeffrey D. Sternklar*
                                                           Jeffrey D. Sternklar (BBO#549561)
                                                           JEFFREY D. STERNKLAR LLC
                                                           26th Floor
                                                           225 Franklin Street
                                                           Boston, MA  02110
                                                           Telephone:  (617) 396-4515
                                                           Facsimile:   (617) 507-6530
                                                           Email:  jeffrey@sternklarlaw.com

                                                           Counsel to White Winston Select
                                                           Asset Funds, LLC